## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| TONY HOBBS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-047-L (BH) |
| | § | |
| KYLE WARREN; CITY OF GARLAND; | § | |
| and CITY OF MESQUITE, | § | Referred to U.S. Magistrate Judge |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By order of reference, filed August 27, 2019 (doc. 58), before the Court for recommendation are *Defendant The City of Mesquite's 12(b)(6) Motion to Dismiss First Amended Complaint*, filed June 21, 2019 (doc. 42); and *City of Garland's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)*, filed June 27, 2019 (doc. 48). Based on the relevant filings and applicable law, the municipalities' motions should be **GRANTED**, and the plaintiff's claims against them should be **DISMISSED with prejudice**.

### I. BACKGROUND

This excessive force civil rights case arises from police officers' pursuit and arrest of Tony Hobbs (Plaintiff), who was suspected of misdemeanor shoplifting at a local hardware store, after he fled. (doc. 41 at 2.)[1] Plaintiff contends that responding uniformed Mesquite Police Department (MPD) officers initiated and continued their pursuit of him even though store personnel allegedly asked them to disregard their report because Plaintiff had not stolen anything. (*Id.*)

On January 12, 2017, Kyle Warren (Officer), an off-duty officer in the Garland Police Department (GPD), was a passenger in his then wife's car as it traveled on a busy interstate highway

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

when he saw Plaintiff fleeing from MPD officers, and he heard them yell, "Police, Stop!" (*Id.*)  As Plaintiff was attempting to cross the highway, Officer allegedly "instructed his then wife to drive toward [him]" and then opened the passenger door "of the moving vehicle and used it as a weapon to strike [Plaintiff.]"  (*Id.* at 3.)  An MPD officer's body camera captured audio of Officer admitting that he hit Plaintiff with his car door. (*Id.*)

As a result of the impact, Plaintiff was thrown to the ground, where he allegedly lay motionless and injured as Officer exited his car and detained him.  (*Id.* at 3.) Plaintiff claims that despite the fact that he was "moaning and writhing in pain as he bled onto the ground from his face and ear," MPD officers did not administer medical care and "forced [him] to walk to the police car," even after he pleaded with them to stop because of his injuries.  (*Id.*)  They took him directly to jail instead of the hospital, but upon arrival at the jail, staff called an ambulance to take him to the hospital due to his injuries.  (*Id.* at 5.)  He suffered fractured ribs, a fractured skull, bleeding in his brain, impaired mobility, impaired coordination and balance, and nerve and/or cochlear damage, as well as a ruptured ear drum that resulted in hearing loss.  (*Id*. at 4-5.)  Plaintiff was charged with Evading Arrest, but the charge was dismissed on April 23, 2018.  (*Id*. at 5.)

Plaintiff sues the City of Mesquite (Mesquite) and the City of Garland (collectively, Cities) under a theory of municipal liability for failing to train, supervise, and/or discipline their officers.  (*Id*. at 10-14.)  He also sues the City of Garland (Garland) for allegedly tolerating the use of excessive force by its officers.  (*Id.* at 8-11.)

## II. RULE 12(b)(6)

Cities move to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief my be granted.  (*See* docs. 42;46;48.)

2

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 ((noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense").

### III. 42 U.S.C. § 1983

Cities contend that Plaintiff's complaint fails to adequately plead a claim of municipal liability under § 1983. (doc. 43 at 3-4;doc. 48 at 4.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id*. To state a claim, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Municipalities, including counties and cities, may be held liable under § 1983 if the execution of one of their customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978); *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however.[2] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of

---

[2] *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Respondeat Superior*, Black's Law Dictionary (10th ed. 2014).

constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579-80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

## A.    **Mesquite**

Mesquite argues that Plaintiff failed to adequately plead specific factual allegations supporting each of the three elements of a claim for municipal liability against it. (*See* doc. 43.)

### *1.    Policymaker*

As to the first element, Mesquite argues that Plaintiff failed to identify a policy maker or "plead any specific facts to support an inference that any alleged unconstitutional policy, practice or custom was promulgated or ratified by any policymaker." (*See* doc. 43 at 3-7.)

In *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016), the Fifth Circuit clarified that "a plaintiff is not required to single out the specific policymaker in his complaint" to state a claim upon which relief can be granted. *Id.* at 282. Instead,

> [a plaintiff need] only to plead facts—facts which establish that [a] challenged policy was *promulgated or ratified by the city's policymaker.* [Her] complaint did not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme.

*Id.* at 285 (emphasis added). That case involved a claim against the City of Dallas for a "crackdown policy" of arresting vendors without probable cause "in retaliation for annoying-but-protected speech" in Dealey Plaza. *Id.* at 286. Because the plaintiff alleged that the city's official spokesman publically announced the new policy of cracking down on vendors in Dealey Plaza and gave media interviews describing the new policy, the Fifth Circuit found that the plaintiff had sufficiently pleaded promulgation or ratification by a policymaker even though he had not specifically identified one. *See id.* at 286.

Here, Plaintiff's complaint fails to identify any policymaker or any actions taken by Mesquite to ratify or promulgate any policy or system of inadequate training and supervision that allows MPD officers to "escape investigation and discipline for their deliberate indifference to necessary medical care of those that have been detained." (doc. 41 at 13.) He relies primarily on the conduct of the MPD officers in support. As noted, a municipality cannot be liable under a theory of *respondeat superior*. *Piotrowski*, 237 F.3d at 578. Even though his complaint need not "supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme," which he can determine in discovery, he needs to plead some "facts which establish that the challenged policy was promulgated or ratified by the city's policymaker," whoever they are. *Groden*, 826 F.3d 285. Because Plaintiff has not identified a policymaker or alleged facts showing that any policymaker promulgated or ratified an unconstitutional policy, or from which a reasonable inference can be made that it promulgated or ratified an unconstitutional policy, he fails to allege sufficient facts to support the first element of his claim and "raise [his] right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.

6

### 2.    *Official Policy or Custom*

Mesquite also argues that Plaintiff's complaint fails to allege a policy of failing to train, supervise or discipline officers. (*See* doc. 43 at 4-8.)

To show municipal liability, a plaintiff must also show an official policy or custom. *See Piotrowski*, 237 F.3d at 578.  "Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."  *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (finding insufficient an allegation that "[the officer] was acting in compliance with the municipality's customs, practices or procedures") (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79.

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement."  *Peterson*, 588 F.3d at 849 (citing *Brown v. Bryan Co.*, 219 F.3d 450, 458 (5th Cir. 2000), *cert. denied*, 131 S. Ct. 66 (2010)).  To establish municipal liability based on a failure

to train in the Fifth Circuit, the plaintiff must show "'(1) inadequate training procedures; (2) that inadequate training caused the . . . officers to [use excessive force]; and (3) the deliberate indifference of municipal policymakers." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (alteration in original) (quoting *Pineda*, 291 F.3d at 332); *see World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) ("The failure to train must reflect a 'deliberate' or 'conscious' choice by the municipality." (internal quotations omitted)).[3]  Additionally, "it must have been obvious that 'the highly predictable consequence of not training' [the] officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" *Peterson*, 588 F.3d at 849 (quoting *Brown*, 219 F.3d at 461).[4]

Under Fifth Circuit law, a claim that the failure to train caused a constitutional violation "requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *see Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 956 (N.D. Tex. 2014) (quoting *Kitchen v. Dallas Cty.*, 759 F.3d 468, 484 (5th Cir. 2014)) (stating that the most common approach to asserting a failure to train claim is to demonstrate a pattern of similar violations that "were 'fairly similar to what ultimately transpired' when the

---

[3] The elements required to prove claims for failure to train and failure to supervise or discipline are the same. *Snow v. City of El Paso, Tex.*, 501 F. Supp.2d 826, 833 n. 5 (W.D. Tex. 2006) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)); *E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017). The claims are therefore considered together.

[4] Courts recognize that even officers who are adequately trained, supervised, and disciplined "'occasionally make mistakes,'" and "'the fact that they do says little about the training,'" supervision, or disciplinary policies and procedures of a city. *E.G. v. Bond*, No. 1:16-CV-0068-BL, 2017 WL 3493124, at *5 (N.D. Tex. June 29, 2017) (quoting *City of Canton*, 489 U.S. at 391), *adopted by* 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017).  Rather, the "law requires that the officer's shortcomings resulted from the faulty training program (or faulty supervision or discipline procedures) to impose municipal liability for an alleged failure to act." *Id.*

8

plaintiff's own constitutional rights were violated."). A pattern of similar prior incidents "requires similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Fuentes v. Nueces Cty., Tex.*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 851 (alteration in original)). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)); *see Peterson*, 588 F.3d at 851.

Here, Plaintiff alleges that the MPD officers lack training "that ultimately causes [them] to show deliberate indifference to the medical needs of those taken into custody[.]" (doc. 41 at 13.) He claims Mesquite "took no steps to adequately educate or train officers on how to handle situations" such as those involving Plaintiff, even though the risk of serious bodily harm was known or obvious. (*Id.* at 14.) His complaint fails to identify a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by Mesquite, however. (*See id.*) Nor does it identify a pattern of similar prior incidents with specificity. (*See id.*) It also fails to allege facts sufficient to show that there was an obvious need for training, and that there was a deliberate or conscious choice not to provide that training, essentially relying on a single incident. A single incident is not enough to infer an official policy or custom, however. *See World Wide Street Preachers Fellowship*, 591 F.3d at 753–54; *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581.[5]

---

[5] There is an "extremely narrow" single incident exception in the context of failure-to-train claims. *Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014). Under that exception, "§ 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations" in "extreme circumstances." *Brown v. Bryan Co.*, 219 F.3d 450, 459 (5th Cir. 2000), *cert. denied*, 131 S. Ct. 66 (2010)); *Khansari v. City of Houston*, No. H-13-2722, 2015 WL 6650832, at *16 (S.D. Tex. Oct. 28, 2015) (citing *Brown*, 219 F.3d at 452–48). To show liability, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). This exception is not applicable here, however, as Plaintiff does not allege that a decision was made not to train individual officers, or that they were "provided

Plaintiff has failed to sufficiently plead the second element of his claim for municipal liability under § 1983 against Mesquite. *See Twombly*, 550 U.S. at 555.

### 3. *Moving Force*

Mesquite also argues that Plaintiff failed to plead facts "to support an inference of a 'direct causal link between the [alleged and unidentified] policy and the violation.'" (*See* doc. 43 at 4.)

Plaintiff must adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). "In other words, a plaintiff must show direct causation." *Peterson*, 588 F.3d at 848 (citing *Piotrowski*, 237 F.3d at 580). A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Brown*, 520 U.S. at 404) (internal quotation marks omitted); *see also Johnson*, 379 F.3d at 310 (quoting *Fraire*, 957 F.2d at 1281) (noting "[t]his connection must be more than a mere 'but for' coupling between cause and effect"). A plaintiff therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Valle*, 613 F.3d at 542 (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407) ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional

---

no training whatsoever." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) ("Our case law suggests, however, that the exception is generally reserved for those cases in which the government actor was provided no training whatsoever); *see McClendon v. City of Columbia*, 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc*, 285 F.3d 1078 (5th Cir. 2002), *decision on rehearing en banc*, 305 F.3d 314 (5th Cir. 2002) (noting "there is a difference between a complete failure to train . . . and a failure to train in one limited area."). He instead alleges a failure to train in the limited area of arrested persons with medical needs. (*See* doc. 43 at 13-14.)

violations would result."). Simple or even heightened negligence is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (citing *Brown*, 520 U.S. at 407).

Here, Plaintiff alleges that Mesquite's "failure to ensure that written policies were adequately implemented," and its tolerating the failure to "attend to the medical needs of those taken into custody, as well as the lack of adequate training . . . constitutes deliberate indifference to [his] constitutional rights." (doc. 43 at 14.) He claims this deliberate indifference to his constitutional rights was "the moving force behind the constitutional violations" that caused his injuries. (*Id.* at 14-15.)

In *Spiller*, the Fifth Circuit found assertions that several policies "led to" unspecified "unconstitutional arrests and confinements," and that there was a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest," were too vague and conclusory to support the causation element for municipal liability under *Monell*. 130 F.3d at 167. Under *Spiller*, Plaintiff's assertions that the MPD officers' actions resulted from a lack of training, supervision, and/or discipline are likewise too vague and conclusory to support the causation element for municipal liability. *See id.* They are not sufficient to show "how the [alleged] customs and practices . . . were a 'moving force' behind the [alleged] specific constitutional violations made the basis of this suit . . .". *Bragg v. Safeek*, No. 3-09-CV-1931-N-BD, 2010 WL 5140670, at *2 (N.D. Tex. Dec. 13, 2010). Accordingly, Plaintiff has also failed to allege sufficient facts to support an inference of causation.

Because Plaintiff has failed to plead sufficient facts to support each of the elements of a claim for municipal liability under § 1983, his claims for failure to train, supervise, and/or discipline against Mesquite should be dismissed for failure to state a claim.

**B.    Garland**

Garland argues that Plaintiff fails to sufficiently allege the second element of his claim for tolerating the use of excessive force and the third element of his claim for failure to train.[6] (doc. 48 at 4-5, 8-10.)

*1.    Custom or Pattern*

Garland argues that Plaintiff fails to sufficiently allege a custom of tolerating the use of excessive force and (doc. 48 at 4-5).

A plaintiff basing municipal liability claim on an alleged "'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of County Comm'rs*, 520 U.S. at 404. One act is insufficient to establish a custom; "[t]here must be a 'persistent and widespread practice.'" *Pineda*, 291 F.3d at 329; *see also Piotrowski*, 237 F.3d at 581. A plaintiff must also show "actual or constructive knowledge of the policy-making official for the municipality." *Id.* at 330.

Plaintiff's complaint alleges that GPD had a policy or custom of tolerating the use of excessive force by its police officers, as demonstrated by a pattern of abusive police conduct, and he cites nine cases of alleged excessive force against GPD officers. (*See* doc. 41 at 8-10.) Although those cases involved excessive force claims, he has not shown that they are sufficiently similar to his case. In several, on-duty officers were conducting arrests in various situations ranging from traffic stops to arrests for public intoxication and trespassing, or responding to emergency calls. *See Rockwell v. Brown et al.*, 664 F.3d 985 (5th Cir. 2011) (on-duty officer responding to a mother's call

---

[6] Garland does not challenge whether Plaintiff has sufficiently alleged the first element of a claim for municipal liability, i.e., a policymaker, for either policy.

12

that her son threatened her shot and killed the son during an altercation); *see also Wright v. City of Garland, Tex.*, No. 3:10-CV-1852-D, 2014 WL 1492356, at \*1 (N.D. Tex. Apr. 16, 2014) (GPD officers responding to a report of a loud party shot at the plaintiff's car as he was exiting the parking lot); *Zielke v. City of Garland, et al.*, No. 3:13-CV-243-N (N.D. Tex. Jan. 18, 2013) (on-duty officer allegedly used excessive force when arresting the plaintiff for public intoxication); *Allen et al. v. City of Garland*, No. 3:13-CV-263-B (N.D. Tex. Jan. 21, 2013) (on-duty officers involved in a vehicle chase allegedly used excessive force during arrest); *Elizondo v. Green*, 671 F.3d 506, 508 (5th Cir. 2012) (on-duty officer responding to call that a man stabbed himself fired his gun three times when the man failed to comply with orders to put the knife down); *Clark v. Kirby, et al.*, No. 3:13-CV-14-F (N.D. Tex. Jan. 4, 2011) (the plaintiff was on the roof of a Garland-owned building when responding officers allegedly used a trained dog to bite and tear his muscle and tendons); *Robinson v. Ivy, et al*, No. 3:10-cv-02496-M-BH (N.D. Tex. Dec. 8, 2010) (GPD officers allegedly "took turns beating and kicking the plaintiff" during a home arrest); *Duffey v. City of Garland*, No. 3:06-CV-1239-P (N.D. Tex. June 12, 2006) (on-duty officer allegedly used excessive force during a traffic stop); *Ling v. City of Garland*, No. 3:05-CV-1754-P (N.D. Tex. Aug. 31, 2005) (officer allegedly used excessive force during a traffic stop).  Plaintiff fails to allege that in any of them, an off-duty officer assisted uniformed police officers from a neighboring police department in apprehending a suspect fleeing on foot.  (*See* doc. 41 at 2-3.)  Because the cases Plaintiff cites "are distinguishable from the instant case and do not establish a pattern," they are insufficient to show a custom or policy supporting municipal liability. *See Lopez-Rodriguez v. City of Levelland, Tex.,* 100 F. App'x 272, 274 (5th Cir. 2004); *see also Fuentes*, 689 F. App'x at 778.

   In addition, as noted, the Fifth Circuit also requires that a pattern of violations be

13

"'sufficiently numerous.'" *Fuentes*, 689 F. App'x at 778 (quoting *McConney*, 863 F.2d at 1184); *see Peterson*, 588 F.3d at 851. "Although there is no rigid rule regarding numerosity, [the Fifth Circuit has found] that 27 prior incidents of excessive force over a three-year period ... and 11 incidents offering 'unequivocal evidence' of unconstitutional searches over a three-year period ... were not sufficiently numerous to constitute a pattern." *Fuentes*, 689 F. App'x at 778 (internal citations omitted); *compare Peterson*, 588 F.3d at 850–52 (finding 27 incidents over three years insufficient), and *Pineda*, 291 F.3d at 329 (finding 11 incidents over three years insufficient), with *Harper*, 2015 WL 13729793, at *2–3 (determining that 14 shootings in the same year as the shooting at issue, along with other facts about DPD shootings, were sufficient to "support a reasonable inference that a persistent, widespread practice of excessive force" existed), and *Flanagan*, 48 F. Supp. 3d at 954 (finding that "[w]hile it was a close call," 12 shootings in the same year as the shooting at issue, along with other facts regarding prior shootings, were sufficient to infer a "persistent, widespread practice by DPD officers" at the motion to dismiss stage). Even assuming for purposes of this motion only that the nine prior incidents Plaintiff cited are similar enough to reasonably infer a pattern sufficient to establish a custom or policy of excessive force by GPD simply because they involved alleged excessive force by police officers, the incidents occurred over an eight-year period between 2004 and 2012. For this reason, they are not "sufficiently numerous" to demonstrate a pattern sufficient to support such a custom or policy. *See Fuentes*, 689 F. App'x at 778. Plaintiff has therefore failed to sufficiently allege the second element of his municipal liability claim as to Garland's alleged policy of tolerating the use of excessive force by its officers.

### 2. *Moving Force*

Garland also argues that Plaintiff fails to state a claim for failure to train because his

14

complaint "contains no statements as to whether [its] 'Policy' was the 'Moving Force' behind the alleged violation[.]" (doc. 48 at 8.)[7]

Here, Plaintiff alleges that the lack of training provided to GPD officers "ultimately causes officers to escalate the need for force[.]" (doc. 41 at 10.)  He claims that despite various law suits regarding alleged use of excessive force, Garland provides inadequate training and supervision. (*Id.*) He alleges that Garland's "customs, practices and policies" were "the moving force, and the direct cause of [his] being abused and assaulted" in violation of his constitutional rights, and that Officer treated him "with excessive force because [he] feared no adverse consequences as a result of the reprehensible conduct."  (doc. 41 at 10, 13.)  He claims that Garland "took no steps to adequately educate or train officers on how to handle situations such as [his] even though the consequences of such practice –serious bodily injury– was known or obvious." (*Id.* at 12.) Plaintiff contends that Garland's "failure to ensure that written polices were adequately implemented" "as well as the lack of adequate training" constitutes deliberate indifference to his constitutional rights. (*Id.* at 13.)

Under *Spiller*, Plaintiffs' assertions that Officer's actions resulted from a lack of training, supervision, and/or discipline are too vague and conclusory to support the causation element for municipal liability. *See* 130 F.3d at 167. He fails to allege facts to support his allegations that Garland's training or procedures were inadequate, that there was an obvious need for more training, or that there was a failure to discipline its officers. His conclusory assertions are not sufficient to show "how the [alleged] customs and practices . . . were a 'moving force' behind the [alleged] specific constitutional violations made the basis of this suit . . .". *Bragg*, 2010 WL 5140670, at *2. Accordingly, Plaintiff has also failed to allege sufficient facts to support an inference of causation.

---

[7] Garland does not appear to expressly challenge whether Plaintiff has sufficiently alleged the failure to train, supervise or discipline as a policy.  (*See* doc. 48 at 4-8.)

15

Because Plaintiff has failed to plead sufficient facts to support a finding of municipal liability under § 1983, his claims against Garland for failure to train, supervise, and/or discipline, and for tolerating the use of excessive force, should be dismissed for failure to state a claim.

## IV. RECOMMENDATION

Cities' motions to dismiss for failure to state a claim upon which relief can be granted should be **GRANTED**, and Plaintiff's claims against them should be **DISMISSED with prejudice**.

**SO RECOMMENDED** on this 10th day of February, 2020.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16