IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONY HOBBS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-047-L (BH) |
| | § | |
| KYLE WARREN; CITY OF GARLAND; | § | |
| and CITY OF MESQUITE, | § | Referred to U.S. Magistrate Judge |
|     Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By order of reference, filed August 27, 2019 (doc. 58), before the Court for recommendation is *Defendant Kyle Warren's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support*, filed June 26, 2019 (doc. 46). Based on the relevant filings and applicable law, the defendant's motion should be **GRANTED**, and the plaintiff's claims against him should be dismissed with prejudice.

### I. BACKGROUND

This excessive force civil rights case arises from police officers' pursuit and arrest of Tony Hobbs (Plaintiff), who was suspected of misdemeanor shoplifting at a local hardware store, after he fled from responding uniformed Mesquite Police Department (MPD) officers. (doc. 41 at 2.)[1]

Plaintiff alleges that Kyle Warren (Officer), an off-duty officer in the Garland Police Department (GPD), was a passenger in his wife's car as it traveled on a Interstate 635 on January 12, 2017, when he saw police lights flashing and heard, "Police, Stop!" (*Id.*) Plaintiff was attempting to run across Interstate 635 as he fled from MPD officers when Officer allegedly told his wife to drive toward him, and as their vehicle approached him, Officer "opened the passenger door

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

of the moving vehicle and used it as a weapon to strike [Plaintiff.]" (*Id.* at 3.) Plaintiff was not carrying a weapon or threatening anyone as he fled from MPD officers. (*Id.* at 2.)

As a result of "being struck by the weight and momentum of the car door," Plaintiff contends that he was thrown to the pavement, where he allegedly lay motionless and injured as Officer exited his car and detained him. (*Id.* at 3.) He suffered fractured ribs, a fractured skull, bleeding in his brain, impaired mobility, impaired coordination and balance, and nerve and/or cochlear damage, as well as a ruptured ear drum that resulted in hearing loss. (*Id*. at 4-5.)

An MPD officer's body camera captured audio of Officer admitting that he hit Plaintiff with his car door. (*Id.* at 3.) An officer's dash camera recorded an MPD officer telling others that Officer "door-checked" Plaintiff; he "saw the door pop open and [Plaintiff] fall back on the highway." (*Id.* at 3-4.) Other MPD officers could be heard discussing how Officer "door checked [Plaintiff] pretty hard" as they were attempting to determine Plaintiff's injuries. (*Id.* at 4.) The recording also captured audio of an MPD officer stating that Officer "slammed [Plaintiff] with his door," and he "went flying onto the ground." (*Id*.) Another MPD officer responded, "you don't know what a Garland PD officer is gonna do." (*Id*.)

On January 7, 2019, Plaintiff sued Officer and the Cities of Mesquite and Garland jointly under 42 U.S.C. § 1983 for violation of his constitutional rights. (*See* doc. 1 at 4-5.) After Officer moved to dismiss the complaint or, alternatively, for a Rule 7(a) reply, Plaintiff sought and received leave to file an amended complaint. (*See* docs. 29; 33; 40; 41.) He sues Officer in his individual capacity for violating his Fourth and Fourteenth Amendment rights to be free from excessive force. (doc. 41 at 1, 6-8.) He alleges that the degree of physical force Officer used was objectively unreasonable because he did not pose a threat to Officer or any other person at the time, he was only

2

suspected of misdemeanor shoplifting, and he did not have a weapon. (*Id.* at 5-6.)

## II. RULE 12(b)(6)

Officer moves to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (*See* doc. 46.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

3

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 ((noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

### III. 42 U.S.C. § 1983

Officer moves to dismiss Plaintiff's § 1983 claims against him, in relevant part, on grounds that his amended complaint does not plead enough facts to overcome Officer's qualified immunity. (*See* doc. 46 at 9.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id*.  To state a claim, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.     Qualified Immunity**

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity.  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  Qualified immunity protects government officials from liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine protects "all but the plainly

4

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because the doctrine provides immunity from suit, and not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The determination of whether a defendant is entitled to qualified immunity involves a two-prong inquiry. The first prong entails consideration of whether the facts alleged or shown state a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Under the second prong, courts must decide whether the constitutional right was "'clearly established' at the time of defendant's alleged misconduct." *Id.* (quoting *Saucier*, 533 U.S. at 201). Courts have discretion to decide which of the two prongs to address first in light of the particular circumstances of the case. *Id.* at 236; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle' . . . is now advisory.").[2] They may also address only one of the prongs. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)("We can decide one question or both.")(citing *Pearson*, 555 U.S. at 232); *see also Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'").

**B.     Clearly Established**

Officer argues that Plaintiff's claims against him should be dismissed because it was not clearly established that using the car door of a moving vehicle to stop a fleeing suspect who is

---

[2]Current law applies to the first prong, but "the law at the time of the incident" applies to the second prong. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

attempting to run across an interstate highway is objectively unreasonable. (doc. 46 at 9.)[3]

In order for a constitutional right to be "clearly established" under the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Saucier*, 533 U.S. at 202. "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). The Supreme Court has repeatedly warned courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011) (the general proposition "that an unreasonable seizure violates the Fourth Amendment is of little help"). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate," although a case directly on point is not required. *al–Kidd*, 563 U.S. at 741. When the constitutional violation is obvious, a materially similar case is

---

[3]The Supreme Court has held that plaintiffs are not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc) (a plaintiff is not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12"). "Courts in this district have [generally] denied without prejudice motions to dismiss on qualified immunity grounds when the motion is filed before the defendant has answered and actually raised the defense." *McKay v. Dallas Indep. Sch. Dist.*, No. 3:06-CV-2325-L, 2007 WL 2668007, at *9 (N.D. Tex. Sept. 6, 2007). Here, because Officer raised his qualified immunity defense in his initial motion to dismiss, and Plaintiff amended his complaint in response, (*see* docs. 29; 41), "the Court has sufficient factual allegations to make a ruling on the qualified immunity defense asserted in the most recent motion to dismiss . . . , [so it may] consider the qualified immunity defense as asserted in the motion to dismiss." *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881 (N.D. Tex. May 25, 2017), *adopted by*, 2017 WL 3034317 (N.D. Tex. July 17, 2017); *see Prater v. Wilkinson Cty., Miss.*, No. 5:13-CV-23-DCB-MTP, 2014 WL 7334185, at *4–5 (S.D. Miss. Dec. 19, 2014) (considering qualified immunity defense raised in a motion to dismiss where the defendants asserted the defense in their initial motion to dismiss, the plaintiff amended his complaint, and the defendants reasserted the defense in a subsequent motion to dismiss).

unnecessary in order to find the law clearly established. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).[4]

Recently, in *Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019), the Fifth Circuit provided additional guidance for determining whether the law is clearly established in the context of excessive force cases. It began its analysis with a reminder that a plaintiff bears the heavy burden of proof to show that an officer violated clearly established law, and that a right is only clearly established "if relevant precedent has placed the constitutional question beyond debate." *Id.* at 874 (quoting *al-Kidd*, 563 U.S. at 741). Noting the amount of Supreme Court precedent "warning[] about the difficulty of placing a question beyond debate," it then set forth "four applicable commandments" distilled from that precedent: (1) courts "must frame the constitutional question with specificity and granularity;" (2) "clearly established law comes from holdings, not dicta;" (3) overcoming qualified immunity is especially difficult in excessive-force cases;" and (4) courts must think twice before denying qualified immunity." *Id.* at 874-876. The Fifth Circuit emphasized that the result in excessive force cases "'depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.'" *Id.* at 876 (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018)). Because officers are forced to make "split-second decisions" regarding the use of force, "the law must be *so* clearly established that – in the blink of an eye . . . every reasonable officer would know it immediately."

---

[4]Qualified immunity "will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Newman v. Guedry*, 703 F.3d 757, 763-64 (5th Cir. 2012) (rejecting argument that officer had no reasonable warning that tasing a suspect multiple times violated his constitutional rights because there was then no binding caselaw on the appropriate use of tasers). The Fifth Circuit has specifically recognized that the law may be "clearly established" even when there is no materially similar precedent in cases involving "extreme or egregious conduct that has been held to be a clearly established violation of a more general constitutional right." *Zimmerman v. Cutler*, 657 F. App'x 340, 346 (5th Cir. 2016) (citing *Hope*, 536 U.S. at 738 (officials handcuffed prisoner to hitching post for seven hours in mid-day heat); *Cole v. Carson*, 802 F.3d 752, 773–74 (5th Cir. 2015) (officer intentionally fabricated evidence to frame plaintiffs for a felony they did not commit); *Wilkerson v. Goodwin*, 774 F.3d 845, 858 (5th Cir. 2014) (officials held plaintiff in solitary confinement for nearly forty years)).

7

*Id.* (citing *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009).

### 1. Controlling Authority

As noted, it is the plaintiff's burden to identify controlling precedent that "squarely governs" the specific facts at issue, or that renders "beyond debate" that any reasonable officer would know that the conduct at issue violated a constitutional right. *Morrow*, 917 F.3d at 876. "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Mullenix*, 136 S. Ct. at 312.

Plaintiff does not identify any Supreme Court or Fifth Circuit case that would have notified Officer in January 2017 that intentionally "door-checking" a suspect to stop him from fleeing on foot across an interstate highway was objectively unreasonable. He instead argues that *Brown v. Long Beach Police Dep't*, 105 F. App'x 549 (5th Cir. 2004), is factually similar. (doc. 52 at 23.) In *Brown,* a 300-pound officer chased and tackled a teenage girl weighing less than 100 pounds, breaking her pelvis as a result, after she fled while he was attempting to arrest her for truancy. *Id.* at 550. Affirming the denial of the officer's motion to dismiss based on qualified immunity, the Fifth Circuit stated that although there was no case law expressly prohibiting the officer's actions under the specific facts, there was no case law permitting it. *Id.* Noting that the Fourth Amendment right to be free from the excessive use of force by law enforcement officers was clearly established, the court found that it did not appear beyond doubt that the plaintiff would be unable to prove that the officer's actions were objectively unreasonable, especially in light of the nonviolent nature of the offense for which he was arresting her and the apparent lack of threat she posed to anyone. *Id.*

8

at 550-51.[5]

Both the Supreme Court and the Fifth Circuit have made clear that police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *See Kisela*, 138 S.Ct. at 1153; *Morrow*, 917 F.3d at 876. A case involving a petite teenage girl attempting to flee a 300-pound truancy officer does not "squarely govern" the allegations in Plaintiff's complaint that Officer saw flashing police lights, heard police officers' verbal commands to stop, and saw a fleeing adult male suspect attempting to run across the interstate highway on which Officer was traveling. *See id. Brown* does not so clearly establish the law so that "in the blink of an eye," every reasonable officer in this circuit would immediately know that intentionally door-checking a suspect to stop him from running across an interstate highway violated the Fourth Amendment. *Morrow*, 917 F.3d at 876. Plaintiff has not met his burden to identify relevant precedent that placed the constitutional question beyond debate.[6]

Nor has he alleged facts that rise to the level of an obvious constitutional violation for which no materially similar case is required. *See Hope*, 536 U.S. at 738. The complaint alleges that as

---

[5] Plaintiff concedes that the facts of this case are distinguishable from the two other cases upon which he relies because he was fleeing from police officers, but notes that like the arrestees in those cases, he was not carrying a weapon or threatening anyone. (*See* doc. 52 at 22-23 (distinguishing *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016), and *Darden v. City of Fort Worth*, 866 F.3d 698, 706 (5th Cir. 2017).) The Supreme Court has rejected a prohibition on the use of deadly force where a suspect poses no immediate threat to the officer or others. *See Mullenix,* 136 S.Ct. at 308-09; *Morrow*, 917 F.3d at 878.

[6] Officer argues that *Morrow* is factually instructive despite the fact that it was issued after the events in this case. In *Morrow,* an officer used a maneuver called a "rolling block" in an attempt to stop a speeding motorcyclist during a high speed chase. 917 F.3d at 872-873. When he slowed his police SUV and moved it over in front of the approaching motorcyclist, the motorcyclist crashed into the back of the officer's SUV and was killed. *Id.* at 873. The Fifth Circuit affirmed the district court's finding that the officer was entitled to qualified immunity because the law was not clearly established that using a rolling block to stop a motorcyclist during a high-speed chase violated the Fourth Amendment. *Id.* at 876-880. Although this case also involved the use of a vehicle to stop a fleeing suspect, the Supreme Court has specifically acknowledged that "the threat posed by the flight on foot of an unarmed suspect[, as in this case, is not] even remotely comparable to the extreme danger to human life posed by [a high speed chase]." *Scott v. Harris*, 550 U.S. 372, 383 (2007). *Morrow* is therefore factually inapposite.

Officer was traveling on the interstate, he was able to see flashing police lights, hear the MPD's officers' verbal commands to stop, and see Plaintiff attempting to run across it. These facts are sufficient to support a perceived threat to pursuing officers or innocent motorists traveling on an interstate who might suddenly slow down because of the flashing lights and/or brake or swerve to avoid hitting a person running across it. Officer made a split second judgment to door-check Plaintiff to stop his flight across the highway. Even viewing the facts in the light most favorable to Plaintiff, he has not pleaded "extreme or egregious conduct" of the type found to be a clearly established violation of a more general constitutional right. *See Zimmerman*, 657 F. App'x at 346.

### 2.   *Robust consensus*

In the absence of controlling authority, plaintiffs may point to "a robust consensus of persuasive authority" to meet their burden to show that the law so clearly and unambiguously prohibits conduct such that every reasonable official would understand that the particular conduct violates the law. *Turner v. Lieutenant Driver*, 848 F.3d 678, 685–86 (5th Cir. 2017); *see also Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (same). The Fifth Circuit has not quantified the level of out-of-circuit consensus necessary to put the relevant question "beyond debate," but it must be "robust." *Morrow*, 917 F.3d at 879-80.

Plaintiff has not identified any out-of-circuit cases involving an officer "door-checking" a fleeing suspect, much less a robust consensus of authority showing that the law was clearly established. The term does not seem to appear in any reported cases, although there a few cases involving suspects fleeing on foot who were hit by police vehicles. In *Gaillard v. Commins*, 562 F. App'x 870, 872 (11th Cir. 2014), the passenger in a vehicle suspected of transporting cocaine abandoned the vehicle and fled on foot, and the pursuing officer turned his vehicle towards his

running path, accelerated and struck him. The passenger died from his injuries. *Id.* Assuming that a jury might find that the officer intentionally struck the passenger and that his use of deadly force was unreasonable, the Eleventh Circuit found that *Tennessee v. Garner*, 471 U.S. 1 (1985), clearly established the law for the use of deadly force in the pursuit of an unarmed suspected felon fleeing on foot who did not pose an immediate threat, and it affirmed the denial of summary judgment to the officer. *Id.* at 876-77. The Fifth Circuit has noted that the Supreme Court has warned courts against extending *Garner*, however. *See Morrow*, 917 F.3d at 878.

In *Soto v. Gaudett*, 862 F.3d 148, 152-53 (2d Cir. 2017), a passenger who jumped out of a vehicle involved in a car chase and fled on foot was hit by a police cruiser as he ran across the street to escape an officer pursuing him on foot. The Second Circuit affirmed the denial of summary judgment on grounds that the determination of whether the collision was accidental or intentional involved a credibility issue. *Id.* at 161.

In *Jacquez v. City of San Jose*, No. 16-cv-05330-NC, 2018 WL 3730324, at *1 (N.D. Cal. Aug. 6, 2018), an officer deliberately drove his car at a speed of 25 or 30 miles per hour into a suspect fleeing on foot. The district court found that in 2015, the law was clear in the Ninth Circuit that officers should give warning to felony suspects fleeing on foot through residential neighborhoods when possible before potentially taking their lives, and that there was no reason to abandon the principle based on the officer's use of a car instead of a bullet. *Id.* at *8. Finding a genuine issue of material fact concerning the feasibility of a warning, the court denied summary judgment.[7]

---

[7]In contrast, in *Robinson v. City of New York*, No. 16-CV-546 (ERK)(ST), 2018 WL 4344949, at *1 (E.D.N.Y. Sept. 11, 2018), a suspect fleeing from police after a suspected drug sale ran diagonally from a sidewalk into a four-lane intersection to avoid being caught by the officer chasing him on foot and was struck by a police vehicle. The officer driving the vehicle at a speed of five to ten miles per hour was attempting a "tactical stop"

11

Only one of these cases predates the events in this case, so the other two are irrelevant. *See Morrow*, 917 F.3d at 880. Even if all three were relevant and sufficiently factually similar to this case, however, a total of three does not rise to the level of "robust" out-of-circuit consensus necessary to place the constitutional question beyond debate in this circuit. *See id.* at 879-80 (noting that even a doctrine accepted in six circuits was insufficient to create a robust consensus where the circuits were not unanimous in its "contours" or application to similar facts). Additionally, none of these cases involve a suspect fleeing officers by attempting to run across an interstate highway instead of a neighborhood or intersection, as in this case. Nor did they involve a door-check, i.e., striking the suspect with the door of the vehicle instead of with the entire vehicle.

Taking the allegations in the amended complaint as true, as required at this stage of the proceedings, Plaintiff has not carried his burden of identifying controlling precedent or a robust consensus that "squarely governs" the specific facts at issue in this case, or places the constitutional question beyond debate such that any reasonable officer would know that using a door-check to stop a suspect attempting to run across an interstate highway violates the Fourth Amendment. *See Morrow*, 917 F.3d at 876-77; *see also Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (holding that the plaintiff failed to shoulder her burden to "point[] ... to any case that shows, in light of the specific context of this case, that the [defendants'] conduct violated clearly established law" and that, although the court's "independent review [ ] uncovered" persuasive authority, "a single, fifty year old case from another circuit is [not] sufficient in this instance to have 'placed the ... constitutional question beyond debate'")). Binding precedent dictates dismissal of

---

maneuver, which involved strategically stopping the police vehicle in the suspect's path of flight. *Id.* at 5. The court noted in dictum that it was aware of no precedent indicating that a suspect running from police on foot has a right against having his path of flight blocked with a stopped (or nearly stopped) police vehicle, so any constitutional violation was not based on a clearly established right. *Id.*

Plaintiff's claims against Officer on the basis of qualified immunity at this stage of the proceedings as a matter of law.[8]

## IV. RECOMMENDATION

Officer's motion to dismiss should be **GRANTED**.

**SO RECOMMENDED** on this 19th day of February, 2020.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[8] Because Plaintiff has failed to meet his burden to show that the law was clearly established such that the alleged use of force was unreasonable, Defendant's argument that Plaintiff has failed to plead a cognizable excessive force claim is not addressed.

13