IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TONY HOBBS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-47-L-BH** |
| | § | |
| | § | |
| **KYLE WARREN; CITY OF GARLAND;** | § | |
| **and CITY OF MESQUITE,** | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant Kyle Warren's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss) (Doc. 46), filed June 26, 2019.  On February 19, 2020, the Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 60) was entered, recommending that the court grant the Motion to Dismiss (Doc. 46) and dismiss with prejudice on the basis of qualified immunity Tony Hobbs's ("Plaintiff" or "Hobbs") excessive force claim against off-duty Garland police officer Kyle Warren ("Warren") in his individual capacity under 42 U.S.C. § 1983.  Without addressing whether the force allegedly used by Warren in assisting with the detention or arrest of Hobbs was excessive or whether the facts as alleged by Hobbs establish a violation of a constitutional right, the magistrate judge focused on and concluded that Warren is entitled to qualified immunity because Hobbs "failed to meet his burden to show that the law was clearly established such that the alleged use of force was unreasonable."  Report 13 & n.8.

On March 4, 2020, Hobbs filed objections to the Report, to which Warren responded on March 16, 2020.  For the reasons that follow, the court **accepts as supplemented** the magistrate

judge's findings and conclusions; **overrules** Plaintiff's objections; **grants** Defendant Kyle Warren's

Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 46); and **dismisses with prejudice**

Plaintiff's excessive force claim under the Fourth Amendment to the United States Constitution

against Warren on the basis of qualified immunity.[1]

## I.      Factual and Procedural Background

Hobbs brought this action against Warren, the City of Garland, and the City of Mesquite

(collectively, "Defendants") on January 7, 2019.  He alleges that, on January 12, 2017, the force used

by Warren in assisting Mesquite police officers to detain him was excessive and violated his civil

right to be free from seizure under the Fourth and Fourteenth Amendments in contravention of 42

U.S.C. § 1983.[2]  In his Original Complaint, Hobbs alleged that "he was standing on the shoulder [of]

Interstate 635 waiting for traffic to lighten" when "Warren opened the passenger door [of the car

driven by his wife] and used it as a weapon to strike [him] as he was standing in the shoulder waiting

to cross the road."  Pl.'s Orig. Compl. ¶¶ 11-12.

On April 16, 2019, Warren filed his Answer asserting the defense of qualified immunity and

moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Hobbs's excessive force

claim based on qualified immunity and failure to allege sufficient facts to state an excessive force

claim.  On May 3, 2019, before briefing on Warren's original motion to dismiss was complete,

Hobbs moved for leave to amend his pleadings to "more accurately plead [his] excessive force claim

---

[1] In making this determination, the court **incorporates by reference**, as if repeated herein verbatim, the Rule 12(b)(6) standard in the Report.

[2] In addition, Plaintiff sued the City of Mesquite and the City of Garland under a theory of municipal liability for their alleged failure to train, supervise, and discipline their officers. He also sued the City of Garland for allegedly tolerating the use of excessive force by its officers. Those claims have been dismissed with prejudice by separate order on the ground that Plaintiff's pleadings were insufficient to support a finding of municipal liability under section 1983. As a result, only Plaintiff's excessive force claim against Warren in his individual capacity remains.

**Memorandum Opinion and Order – Page 2**

against Defendant Warren" in light of dash camera and body camera videos of the incident that were provided by opposing counsel.  Pl.'s Mot. for Leave ¶ 17 (Doc. 33).  The court granted Plaintiff's motion for leave over the defense's opposition and allowed him to amend his pleadings.

## A.    Allegations in Plaintiff's First Amended Complaint Against Warren

In his First Amended Complaint ("Amended Complaint") (Doc. 41), Hobbs removed his prior allegation that he was standing in or on the shoulder of Interstate Highway 635 ("IH 635")[3] when he was struck and alleges now that he was attempting to cross IH 635 as he was fleeing from Mesquite police officers when Warren used the passenger car door to strike him.  Pl.'s Am. Compl. ¶¶ 15-16.  In addition, Hobbs alleges as follows with respect to his excessive force claim against Warren:

> 6. On January 12, 2017, [] Warren, a Garland Police Officer, was off[-]duty and a passenger in his wife's vehicle, which was travel[]ing down [IH] 635.

> 7. [] Warren saw [him] running from uniformed Mesquite Police Officers.

> 8. [He] was suspected of committing misdemeanor shoplifting from a nearby Home Depot.

> 9. Home Depot personnel asked Mesquite Police Department to disregard [him] since he did not take anything.

> 10. However, Mesquite Police Officers initiated and continued their pursuit of [him], knowing that [he] had not stolen anything from Home Depot.

---

[3] The court takes judicial notice that "IH 635 was constructed in the late 1960s and early 1970s to serve as an outer loop freeway and provide mobility for the rapidly growing North Dallas, Garland, and Mesquite areas" of North Texas.  North Central Texas Council of Governments, IH 635 LBJ East Project, Attachment 1 Project Narrative FY 2018 Build Grant Application 3 (July 18, 2018), *available at* https://www.nctcog.org/nctcg /media/ Transportation/DocsMaps/Fund/TIP/ BUILD_Grant/IH635-Submitted-BUILD-Grant-Application-Package-2018.pdf. It is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).  The court's decision to take judicial notice of this information regarding IH 635 is purely for background purposes and does not affect the resolution of the Motion to Dismiss.

**Memorandum Opinion and Order – Page 3**

11. [] Warren attempted to assist the Mesquite Officers by making an unlawful and illegal seizure of [his] person.

12. At the time he voluntarily involved himself in this matter, [] Warren had no understanding or information as to why [he] was running from the police.

13. The only information [] Warren had before striking [him] with the car's door was that he saw the police lights flashing and heard "Police, Stop!"

14. [He] was not carrying a weapon or threatening anyone as he was fleeing the officers, nor was he when .[] Warren and his then wife approached [him] in their vehicle.
. . .

15. As [he] attempted to cross [IH] 635, [] Warren instructed his then wife to drive towards [him].

16. As she approached [him], [] Warren opened the passenger door of the moving vehicle and used it as a weapon to strike [him].

17. Upon being struck by the weight and momentum of the car door, [he] was thrown down onto the pavement.

18. [] Warren then exited the vehicle and detained [him] who was motionless, injured and sprawled out on the ground.

24. Mesquite Police Officer Berg's body camera captured audio of .[] Warren admitting to Officer Berg that he hit [] Hobbs with his door.

25. Mesquite Police Officer Gilbert King's dash camera captured audio of Officer Berg telling other officers that [] Warren "door checked" [] Hobbs.

26. Officer Berg can be heard telling other officers that he saw the door pop open and [] Hobbs fall back on the highway.

27. Officers can be heard on Officer King's dash camera discussing the fact that [] Hobbs was "door checked pretty hard" when they are attempting to discern his injuries and the source of his blood.

28. Officer King's dash camera captured audio of a Mesquite Police officer telling other officers that [] Warren door checked [] Hobbs and he went flying onto the ground. That same Mesquite Police officer can be hard telling the other officers that [] Warren "slammed him with his door."
. . .

36. [] Hobbs was charged with Evading Arrest and that [charge] was dismissed on April 23, 2018.

37. The degree of physical force [] Warren used on [] Hobbs was objectively unreasonable as [he] did not pose a threat to [] Warren or any other person at the time the force was used [or "immediately prior"], [he] was only suspected of misdemeanor shoplifting, and [he] did not have a weapon.

. . .

48. A reasonable officer in [] Warren's shoes would know that using the door of a moving vehicle to door check a suspect who is not displaying a weapon, is not a threat to any officer or other person, and is fleeing from officers after only being suspected of misdemeanor shoplifting is clearly unreasonable and excessive.

. . .

51. A reasonable officer in [] Warren's shoes would know that it was clearly excessive and unreasonable to use deadly force by using the door of a moving vehicle to door check [] Hobbs when [] Warren did not have probable cause to believe that [] Hobbs had committed a felony or posed a significant threat of death or serious physical injury to officers or others.

53. Due to [] Warren's wrongful use of deadly force, [] Hobbs suffered injuries, including fractured ribs, a fractured skull, bleeding in his brain, and a rupture of his right ear drum from the trauma causing hearing loss in his right ear. [] Hobbs did not have these injuries before [] Warren "door checked" [him] and these injuries resulted from solely the "door check." The use of deadly force against a person whom [] Warren knew nothing about, whose alleged offense [] Warren was entirely ignorant, and who posed no threat to Warren, other police officers, or others was objectively unreasonable even in the context of a flight f[rom] the police.

Pl.'s Am. Compl. ¶¶ 6-53.

## B.   Warren's Grounds for Moving to Dismiss Hobbs's Excessive Force Claim

Warren has moved to dismiss Hobbs's excessive force claim on two grounds.  The court addresses each ground in turn.

### 1.   Sufficiency of Excessive Force Allegations

Warren first contends that Hobbs has failed to allege sufficient facts to support an excessive force claim.  Warren does not dispute that Hobbs suffered the injuries alleged.  He, instead, contends that the excessive force claim, as pleaded, does not establish that the injuries Hobbs sustained

resulted directly and only from the force used as opposed to his own actions in running across an

interstate highway to avoid arrest.  In addition, Warren contends that the forced used was objectively

unreasonable:

> Assuming . . . that [] Warren was using the car door to stop Plaintiff . . . , it is well established that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). The reasonableness of the force, under the circumstances, must be examined in the context of what was transpiring – from the perspective of [] Warren. Plaintiff clearly pleads that he was actively fleeing from the Mesquite Police, ignoring commands to stop, and attempting to evade arrest by crossing the main lanes of an interstate highway. He alleges that [] Warren, an off-duty police officer saw him fleeing from the Mesquite police, and heard the police yelling at [him] to stop—commands which he ignored. While [] Warren could not have known what underlying crime he had purportedly committed, he observed that Plaintiff was evading arrest (Tex. Pen. Code § 38.04 Evading Arrest or Detention) and traversing a busy highway (Tex. Pen. Code § 42.03 Obstructing Highway or Other Passageway), destined to cause harm to himself and other innocent motorists.

> According to the Plaintiff's own pleadings, [] Warren was forced into a split-second decision—in circumstances that were clearly tense, uncertain, and rapidly evolving. . . . [U]sing the door of the car to stop the Plaintiff, is not a clearly excessive use of force under the circumstances. Far from being objectively unreasonable, it was the only available means of stopping Plaintiff before he crossed over additional lanes of traffic. The decision to open the passenger door and exit the car is a text-book example of a split-second decision in the context of rapidly evolving and tense circumstances in order to avoid potentially catastrophic harm to the innocent public. Even if the timing of [] Warren's exit from the vehicle resulted in contact between the door and the Plaintiff, that is precisely the type of 20/20 hindsight analysis that cannot give rise to liability.

Def.'s Mot. to Dismiss 4-6 (footnotes omitted).  Warren further asserts that, under Texas law, an

off-duty police officer like himself "becomes an on-duty police officer when he observes a crime,"

and, in this case, he "observed Plaintiff evading arrest by running into the main lanes of a major state

highway."  *Id.* at 5 & n.7 (citation omitted).

In addition, Warren disputes whether he opened and used the car door as a weapon to stop Hobbs, as opposed to merely opening the door to exit the vehicle driven by his wife.  Warren contends that Hobbs's use of the term "weapon" is conclusory and baseless.  *Id.* at 7.  Warren also takes issue with the allegation that he directed his wife to drive "toward" Hobbs, to the extent this allegation suggests that he instructed his wife to hit Hobbs or run him over with the car.  *Id.* at 6. Warren contends that Hobbs has no personal knowledge and no way of knowing at this juncture the substance of the conversation that took place between him and his wife, so this allegation cannot be supported by a "good faith belief."  *Id.* (citing Fed. R. Civ. P. 11(b)(3)).

Warren acknowledges that the focus in ruling on a Rule 12(b)(6) motion is the plaintiff's pleadings, which the court must accept as true, but asserts that "[e]ye[]witness accounts describe the car [driven by his wife] as stopped in one of the interior main lanes of I[H] 635 at the time [he] exited the vehicle."  Def.'s Mot. to Dismiss 7 & n.9.  Warren contends that, "[w]hile these facts are not determinative in the context of a motion to dismiss, Plaintiff clearly understands the 'art of pleading[,]' as he conveniently ignores these accounts and then only vaguely alleges that the car was 'moving' without specifically, or even generally, identifying the alleged speed of the vehicle."  *Id.*

Warren further asserts that, "[i]n any event, the use of the word 'toward' lost any meaningful significance when Plaintiff abandoned his allegations that he was standing on the shoulder waiting for traffic to lighten and placed himself in the main lanes of the interstate highway." Def.'s Mot. to Dismiss 6-7.  Warren, therefore, contends that, "[u]nder the circumstances facing [him], an objectively reasonable officer could quickly conclude that, if he did not exit the vehicle to stop [Hobbs], it was likely that [Hobbs] would cause a potentially fatal accident on I[H] 635 in an effort to elude the Mesquite police chasing him," and, "[a]s such, the Amended Complaint simply does not

allege facts sufficient to establish that Plaintiff suffered an injury that resulted directly and only from the use of force that was clearly excessive to the need and objectively unreasonable." *Id.* at 7.

### 2.    Whether Warren's Conduct Violated Clearly Established Law

Warren next contends that dismissal is warranted because, even assuming the force used was excessive and amounted to a violation of a constitutional right, Hobbs cannot establish that his particular conduct violated clearly established law as required to overcome qualified immunity.[4] Based on the legal standard and facts in *Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019), Warren argues that, in this Circuit, it has not been clearly established that the use of a passenger car door to stop a fleeing suspect as he attempts to run across an interstate highway is objectively unreasonable. Def.'s Mot. to Dismiss 9.  Warren contends that, although *Morrow* was decided after the events in this case, the holding in that case forecloses any argument that his "conduct had been clearly established as unlawful." *Id.*  According to Warren, the court in *Morrow* "held that it was not unlawful for an officer driving an SUV travel[]ing at approximately 55 mph to cut in front of a motorcycle traveling at 100 mph where the motorcyclist posed a threat to other motorists." *Id.* (quoting *Morrow*, 917 F.3d at 874) ("Appellants seek monetary damages from the personal pocket of the law-enforcement officer. The qualified immunity doctrine makes that task difficult in every case. In this case, it's impossible.").  Warren contends that the holding in *Morrow* is notable because, like the plaintiff in *Morrow*, Hobbs was "actively fleeing from police and posed a potentially fatal threat to motorists" because he admittedly was attempting to cross IH 635 when struck. *Id.*  Warren, therefore, argues that "[i]t is difficult to conclude that the Fifth Circuit would hold that opening a car

---

[4] Warren also filed an Answer (Doc. 47) to Plaintiff's First Amended Complaint in which he asserts the defense of qualified immunity.

door in order to stop a pedestrian from running across a crowded interstate highway, as the [Hobbs] has alleged, has been clearly established to be an unlawful use of force, while pulling a moving SUV directly in front of a motorcyclist has been established as a lawful use of force."

In addition, Warren cites authority for the proposition that the Fifth Circuit has "clearly recognize[d] that some amount of force is [c]onstitutionally permitted and may be necessary to effectuate an arrest," particularly when the plaintiff is fleeing, resisting arrest, and ignoring law enforcement commands. *Id.* at 10.[5]  Warren contends that, while the cases cited did not involve a vehicle door, they are controlling and, for the reasons explained by the court in *Morrow*, they do not "foreclose the use of force alleged by [Hobbs]." *Id.* (citing *Morrow*, 917 F.3d at 877).  Thus, Warren asserts that, in light of *Morrow*, Hobbs cannot meet his burden of establishing that the force used was clearly excessive.

### C.    Plaintiff's Response to Warren's Motion to Dismiss

Hobbs maintains in response to the Motion to Dismiss that his excessive force claim is sufficient as pleaded, that is, sufficient to put Warren on notice of the facts he intends to prove to defeat the qualified immunity defense.  Hobbs, nevertheless, requests that he be allowed to amend his pleadings again if the court determines otherwise.  Pl.'s Resp. to Mot. to Dismiss 24 ("Hobbs

---

[5] Warren cites the following Fifth Circuit cases for the propositions noted:

*See Zimmerman v. Cutler*, 657 F[.] App[']x[] 340, 347 (5th Cir. 2016) (Officer used taser to stop a fleeing misdemeanant suspect found not excessive); *see also Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015) (Officers deployed taser seven times, struck suspect with baton, kicked suspect and tackled suspect in an effort to take suspect into custody who was refusing commands and resisting arrest found not excessive); *see also Poole v. City of City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) (force used against suspect resisting arrest not excessive); *see also Galvan v. City of San Antonio*, 435 F[.] App[']x[] 309, 311 (5th Cir. 2010) (force used in course of arrest not excessive).

respectfully asks that if this Court is inclined to believe that [his] pleading, in full or in part, is deficient, that this Court permit [him] an opportunity to amend his Complaint to cure any defects."). Regarding Warren's contentions about the sufficiency of his pleadings, Hobbs contends that there can be no confusion from the allegations in his Amended Complaint that he has alleged an injury and attributed that injury entirely to Warren's conduct by detailing how Warren instructed his wife to drive toward him and then "used the momentum and weight of the car door as a weapon to strike him" and "flatten" him.  Pl.'s Resp. to Mot. to Dismiss 6, 18 (citing Pl.'s Am. Compl. ¶¶ 15-17; 19; 31-32).  Hobbs notes that he also alleges that "he did not have a weapon and posed no danger and that Warren had no information about why [he] was running or what [he] was alleged to have done." Pl.'s Resp. to Mot. to Dismiss 18-19 (citing Pl.'s Am. Compl. ¶¶ 12-17).  Hobbs asserts that Warren's contentions regarding evidence of "eye[]witness accounts" and the need to establish that his injuries were caused by Warren's conduct are not relevant in the context of a Rule 12(b)(6) motion to dismiss.

Hobbs acknowledges that Warren had the right, as a peace officer, to insert himself into the situation but maintains that authority did not give him the right to use unfettered, excessive force. Hobbs contends that Warren's "ignorance of the fact that [he] was accused of a minor shoplifting offense (a charge that was dropped)" does not change this because his pleadings "allege that Warren had no information to explain why [he] was running" and "establish that he was not carrying a weapon or threatening anyone."  Pl.'s Resp. to Mot. to Dismiss 19 (citing Pl.'s Am. Compl. ¶¶ 12 & 14).  According to Hobbs, these allegations are sufficient to support a determination that "Warren used excessive force when [he] weaponized a car door on a moving car to arrest [him when he] posed no threat to anyone." Pl.'s Resp. to Mot. to Dismiss 19.

**Memorandum Opinion and Order – Page 10**

To support his contention that the force used by Warren was excessive and objectively unreasonable, Hobbs relies primarily on the Fifth Circuit's unpublished opinion in *Brown v. Long Beach Police Department*, 105 F. App'x 549 (5th Cir. 2004) (per curium), in which the denial of the police officer's motion to dismiss based on qualified immunity was affirmed because "it d[id] not appear beyond doubt that Brown w[ould] be unable to prove the elements of an excessive force claim," and,

> [a]lthough there was no caselaw expressly prohibiting the tackling of a fleeing teenage girl weighing less than 100 pounds, there was no caselaw permitting it, and the right under the Fourth Amendment to be free from the excessive use of force by law enforcement officers was clearly established. It does not appear beyond doubt that Brown will be unable to prove that Officer Kallas' actions were objectively unreasonable, especially in light of the nonviolent nature of the offense for which he was arresting her (truancy) and the apparent lack of threat she posed to anyone.

Pl.'s Resp. to Mot. to Dismiss 19-20 (quoting *Brown*, 105 F. App'x at 550).  Although *Brown* is unpublished and has no precedential value, Hobbs argues that it is factually analogous in that it involved a teenage girl, who weighed less than 100 pounds, had no known history of violence, and fled from a 300-pound male police officer, who chased and tackled her, breaking her pelvis, while attempting to arrest her for the minor offense of truancy.  Hobbs contends that, in this case, "he is the 100-pound teenager and Warren and his moving car and car door are the 300-pound officer," and like Brown, he has pleaded sufficient facts to support an excessive force finding in light of his allegations that he "was fleeing from a minor, nonviolent offense (attempted shoplifting from a Home Depot Store)."  Pl.'s Resp. to Mot. to Dismiss 20, 23.

Hobbs further asserts, based on the factors in *Graham* and facts alleged in this case, that Warren should have been on notice as a result of "well-established precedent that using a car door

and the momentum of a moving car to hit a pedestrian would have been objectively unreasonable and a violation of the Constitution" because:

> the pleadings establish that [he] posed no threat to anyone, that he was unarmed and certainly that there was no visible weapon, that [] Warren had no idea whether [he] was a suspect, that if [] Warren believed that [he] was a suspect that [] Warren had no information regarding the offense level, that other police officers were in pursuit of [him], and that, presumably, the police officers chasing [him] had more information concerning [his] offense than did [] Warren.

Pl.'s Resp. to Mot. to Dismiss 23-24 (citing *Graham*, 490 U.S. at 396). Hobbs relies on *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016), and *Darden v. City of Fort Worth*, 866 F.3d 698 (5th Cir. 2017), both of which involved the use of force *after* the suspect was no longer resisting detention or arrest. Hobbs "concedes that the facts of this case are distinguishable" from those in *Cooper* and *Darden* because he was admittedly fleeing from the Mesquite police officers pursuing him when struck by the car door. He, nevertheless, asserts that, "like the arrestees in *Cooper* and *Darden*, [he] 'was not carrying a weapon or threatening anyone.'" Pl.'s Resp. to Mot. to Dismiss 22-23 (quoting Pl.'s Orig. Complaint ¶ 10 (Doc. 1)). Hobbs also references *Zimmerman v. Cutler*, 657 F. App'x 340, 342 (5th Cir. 2016) (per curiam), but he does not explain why he believes this case supports his contention that the law was sufficiently clear at the time to put Warren on notice that his use of the passenger door of a moving car to stop him from fleeing and crossing IH 635 was unlawful.

### D. Magistrate Judge's Report

On February 19, 2020, Magistrate Judge Ramirez entered her Report (Doc. 60), recommending that the court grant Warren's Motion to Dismiss and dismiss with prejudice Plaintiff's excessive force claim under § 1983 on the basis of qualified immunity. As noted, her analysis focuses only on whether Warren's conduct violated the second prong of qualified immunity,

that is, whether his conduct was objectively unreasonable in light of clearly established law at the time.  Hobbs filed objections to the Report on March 4, 2020.  Warren responded to the objections on March 16, 2020.

## II.     Discussion

### A.     Plaintiff's Section 1983 Excessive Force Claim

Hobbs's excessive force claim against Warren is brought under section 1983. When addressing a section 1983 claim in the context of a motion to dismiss, regardless of whether qualified immunity is asserted by the defendant, the court must first "determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018) (citation omitted). A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396 (citation omitted).  The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. *Id*. at 397 (citation omitted).  Whether the use of force is reasonable "must be

judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* at 396. In addition, the assessment of reasonableness must take into account "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In applying *Graham*, the Fifth Circuit uses a three-part test that requires a plaintiff to show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citation omitted).

The parties do not dispute, and the court determines, that Hobbs satisfies the first injury element. The court further determines that Hobbs's allegation that his injuries resulted solely from Warren's decision to use the door of a moving car to "door check" him is sufficient at the pleading stage to connect Hobbs's injuries to Warren's alleged use of force for purposes of pleading causation, Pl.'s Am. Compl. ¶¶ 51, 53, even though it is not entirely clear from Plaintiff's Amended Complaint whether Hobbs was struck from behind by the car door or ran into the open car door.[6] That Warren may dispute why he opened the passenger door and whether Plaintiff's injuries resulted from being struck by the door, as opposed to his own conduct in fleeing and running across IH 635,

---

[6] In paragraphs 16 and 17 of his Amended Complaint, Hobbs appears to maintain that he was struck from behind, as he alleges that Warren opened the car door and used the weight and momentum of the car to strike him and throw him down on to the pavement. In paragraph 26, however, Hobbs alleges that Mesquite "Officer Berg can be heard [on the dash camera video] telling other officers that he saw the door pop open and Mr. Hobbs *fall back* on the highway," which suggests that Hobbs may have run into the open car door as Warren suggests. Pl.'s Am. Compl. ¶¶ 16, 17, 26 (emphasis added). As Hobbs alleges that his injuries are attributable solely to Warren's decision to use the door to stop him from fleeing, it matters not for purposes of ruling on the Motion to Dismiss whether Warren contends that Hobbs's injuries may have been sustained as a result of his innocent conduct in opening the door to exit the vehicle. Warren's motive in opening the door is also irrelevant.

Memorandum Opinion and Order – Page 14

are not relevant at this juncture under Rule 12(b)(6). The question, therefore, is whether Hobbs has pleaded facts that plausibly suggest Warren's conduct was objectively unreasonable.

Hobbs alleges that he was only suspected of committing the misdemeanor offense of shoplifting, which Home Depot employees asked Mesquite police officers to disregard; that he was charged with the offense of evading arrest, but that charge was later dismissed; and that he was not carrying or displaying a weapon or threatening anyone. When viewed alone, these factual allegations would seem to support his contention and allegation that he "posed no [known] threat to Warren, other police officers, or others." *Id*. ¶ 53. The court, however, must consider the "totality of circumstances" in determining whether the particular force used was unreasonable,[7] including Hobbs's allegations that, when Warren came on the scene, he observed police lights flashing and Hobbs attempting to cross IH 635 as he was fleeing from the Mesquite police officers and ignoring their commands to "Stop!"

Thus, according to Hobbs's Amended Complaint, the situation Warren encountered was one that was rapidly evolving with Hobbs attempting to cross IH 635 while running on foot from uniformed Mesquite police officers who were pursuing him and yelling at him to "Stop!" *Graham*, 490 U.S. at 396. Warren could have reasonably believed that Plaintiff was fleeing to evade arrest or detention. Even though Warren did not know why the Mesquite police officers were pursuing Plaintiff, that is quite beside the point, as Warren and a reasonable police officer standing in Warren's shoes could have also reasonably believed that the conduct he actually observed—Plaintiff's conduct in running across IH 635—was unnecessarily putting innocent motorists and Hobbs, and the police officers chasing him, at serious risk of harm because of the

---

[7] *Garner*, 471 U.S. at 9.

**Memorandum Opinion and Order – Page 15**

location where all of this was occurring.  The reasonableness of the force used is assessed from what Warren knew, not what he did not know.  As Plaintiff concedes that Warren was unaware of what transpired before he encountered the Mesquite police officers chasing him across IH 635, the seriousness of the shoplifting offense and facts surrounding that offense that gave rise to the Mesquite police officers' investigation and pursuit of him carry little, if any, weight in the court's analysis.

Hobbs argues in his response to the Motion to Dismiss that he was "standing on the shoulder of I[H] 635 waiting for the traffic to clear so that he could cross," and, thus, "not threatening anyone when Warren slammed the car door into [him]."  Pl.'s Resp. Br. to Mot. to Dismiss 16 (Doc. 52) (citing Pl.'s Am. Compl. ¶ 15).  Hobbs also contends that "[a]ccording to the pleadings, Officer Warren and his wife were driving on I[H] 635 when Officer Warren saw [him] *on the side of the road*, observed flashing police lights, and heard "Police, Stop!" Pl.'s Resp. to Mot. to Dismiss 1 (Doc. 51) (citing Pl.'s Am. Compl. ¶¶ 11-13) (emphasis added).  As correctly noted by Warren, however, Plaintiff no longer alleges in his Amended Complaint, the live pleading, that he was standing in or on the shoulder of IH 635, waiting for traffic to clear before crossing, when he was struck by the car door.  This allegation was removed when Plaintiff amended his pleadings after his counsel reviewed the law enforcement videos.  In his Amended Complaint, which supersedes Plaintiff's Original Complaint, Plaintiff now acknowledges that he was running across IH 635 on foot when Warren instructed his wife to drive toward him.  Thus, according to Plaintiff's live pleadings, Warren observed him and struck him with the car door while he was attempting to cross IH 635, not when he was standing on the shoulder of IH 635, waiting for traffic to lighten.

**Memorandum Opinion and Order – Page 16**

Plaintiff makes much ado that Warren was not aware he was suspected of shoplifting, a nonviolent misdemeanor offense, and did not actually take anything from Home Depot. This argument is misplaced. The reasonableness of a police officer's conduct is assessed in light of circumstances then confronting him or her at the scene, rather than hindsight, and from the perspective of a reasonable officer. *Graham*, 490 U.S. at 396. Thus, the reasonableness of Warren's conduct must be viewed in the context of what he knew at the moment when he allegedly struck Hobbs with the car door, not what he did not know, but learned later.

Regardless of what transpired before Warren came onto the scene, Warren, and a reasonable police officer standing in his shoes, could have reasonably believed that Hobbs's conduct in running across IH 635 to avoid detention or arrest posed a threat of serious harm to Hobbs, the police officers chasing him across an interstate highway, and innocent motorists who might happen to unknowingly come upon the pursuit with little or no advance notice. That all of this was playing out on an interstate highway where vehicles generally travel at a much higher rate of speed than in a residential area also adds to the potential danger created by Hobbs's conduct.[8] Under these circumstances, and given Hobbs's refusal to stop as commanded, a reasonable officer in Warren's shoes could have believed that the force used to stop him was reasonable and necessary, even though a violation of section 42.03 of the Texas Penal Code is a Class B misdemeanor. Tex. Penal Code Ann. § 42.03(c).

---

[8] In making this determination, the court disregards Warren's contention that IH 635 is a "busy interstate highway." Def.'s Mot. to Dismiss 4, 5, 9. While this may be common knowledge to those who live in the Dallas-Fort Worth metroplex, Plaintiff does not allege that IH 635 is generally busy or that IH 635 was busy on the day in question. The court, however, can reasonably infer from Plaintiff's pleadings that the incident occurred on January 7, 2019, which was a week day, and during Home Depot's business hours, as opposed to the "wee hours" of the morning. Regardless, whether traffic was heavy at the moment when Plaintiff was attempting to run across IH 635 on foot is of no moment because, as explained, this could have changed in an instant, given the high speeds at which vehicles generally travel on an interstate highway.

**Memorandum Opinion and Order – Page 17**

Hobbs's allegation that he was unarmed does not change this determination by the court, as because there is no indication from Hobbs's pleadings that Warren knew Hobbs was unarmed.

Moreover, with respect to law enforcement activity, officers often observe and rely on the conduct and statements of other law enforcement in a fast-moving situation.  Such reliance is often necessary when split-second decisions must be made.  From Warren's perspective, seeing Hobbs running, red lights flashing, and commands from police officers yelling for him to stop, it was quite reasonable for him to believe that Hobbs was evading arrest or detention and to assist the pursuing officers in detaining or arresting him.

In detecting and suppressing crime, common sense and reason are not thrown to the wind. In other words, Warren had reason to believe criminal activity was afoot. That Home Depot personnel may have asked the Mesquite officers not to pursue Hobbs is quite beside the point, because nothing in the pleadings indicates that Warren was aware of what Home Depot personnel allegedly said.  Likewise, that charges were later dismissed is of no moment because the determinative issue is how things reasonably appeared to Warren at the time he encountered Hobbs.

Hobbs alleges that he was not displaying a weapon, but he does not allege that his hands were in full view; nor does he allege that it was readily apparent from the clothing he was wearing on the winter day in question, January 7, 2019, that he was not concealing a weapon.  That Hobbs turned out to be unarmed is not relevant to the court's analysis and, in any event, is outweighed by the perceived risk posed by his conduct in fleeing to evade detention or arrest, disregarding commands by police officers for him to stop, and running across an interstate highway, all of which, according to his Amended Complaint, was happening quickly when he was struck by the car door.  The threat of serious harm posed by Hobbs's conduct in running across IH 635, and Warren's lack of

knowledge regarding the underlying shoplifting offense, also distinguishes this case from *Brown v. Long Beach Police Department*.

The parties' remaining contentions are not relevant to the court's analysis. Specifically, Plaintiff's contentions and allegations that Warren instructed his wife to drive toward him before allegedly striking him with the passenger door of the car and weaponized the car door and vehicle driven by his wife to "flatten" him are quite beside the point, to the extent they suggest Warren's motives in assisting the Mesquite police officers were improper. As noted, a police officer's motives are irrelevant such that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force[.]" *Graham*, 490 U.S. at 397 (citation omitted). While Warren suggests in his Motion to Dismiss that he may have opened the passenger door simply to exit the vehicle when Hobbs was struck, this assertion is outside the pleadings and is not considered by the court in ruling on the Motion to Dismiss. Warren's contentions regarding eyewitness accounts and other matters outside the scope of the pleadings are similarly irrelevant in the context of a motion to dismiss under Rule 12(b)(6).

Accordingly, for all of these reasons, the factual allegations in Hobbs's Amended Complaint, even when accepted as true, are not sufficient to demonstrate to the court for it to conclude at this point that Warren's use of force was clearly excessive to the need and unreasonable under the circumstances. As a result, Hobbs has not sufficiently pleaded a claim of excessive force. Even assuming, as Hobbs contends, that the facts pleaded by him are adequate to survive a Rule 12(b)(6) challenge, the court determines, for the reasons explained in the magistrate judge's Report, that his excessive force claim is, nevertheless, barred on the basis of qualified immunity.

**Memorandum Opinion and Order – Page 19**

### B.   Warren's Defense of Qualified Immunity

#### 1.   Standard for Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant official must affirmatively plead the defense of qualified immunity.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Warren has asserted this defense in his Answer and Motion to Dismiss.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right.  If the record sets forth or establishes no violation, no further inquiry is necessary.  On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct.  *Id.*  The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.

The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of that then clearly established law."  *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted)); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense.  In the context of qualified immunity, however, this burden varies from the norm.  In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper.  *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994).  Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law.

*Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays Cty.*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him.  If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).  Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. at 341.  Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue.  *Foster*, 28 F.3d at 429.  To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful."  *Anderson*, 483 U.S. at 640.  For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*"  *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays Cty.*, 154 F.3d at 525.  Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts …
to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305,
308 (2015) (citation omitted).  Pursuant to *Mullenix*, courts must consider "whether the violative
nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the
specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations
marks omitted). To defeat or overcome an official's qualified immunity defense, a plaintiff's
complaint must allege specific facts that, if proved, would show that the official's conduct violated
clearly established constitutional or statutory rights.  If "the pleadings on their face show an
unreasonable violation of a clearly established constitutional right," the assertion of a qualified
immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon*,
234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of
Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

### 2.      Clearly Established

The parties disagree whether Warren's conduct violated the second prong of qualified
immunity, that is, whether his conduct was objectively unreasonable in light of clearly established
law at the time in question.  Magistrate Judge Ramirez determined that Warren is entitled to
qualified immunity because:

> Taking the allegations in the amended complaint as true, as required at this
> stage of the proceedings, Plaintiff has not carried his burden of identifying
> controlling precedent or a robust consensus that "squarely governs" the specific facts
> at issue in this case, or places the constitutional question beyond debate such that any
> reasonable officer would know that using a door-check to stop a suspect attempting
> to run across an interstate highway violates the Fourth Amendment.

Report 12 (citing *Morrow*, 917 F.3d at 876-77; and *Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018)).  In support of this conclusion, Judge Ramirez reasoned:

> Both the Supreme Court and the Fifth Circuit have made clear that police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *See Kisela* [*v. Hughes*, 138 S. Ct. 1148, 1153 (2018)]; *Morrow*, 917 F.3d at 876. A case involving a petite teenage girl attempting to flee a 300-pound truancy officer does not "squarely govern" the allegations in Plaintiff's complaint that Officer saw flashing police lights, heard police officers' verbal commands to stop, and saw a fleeing adult male suspect attempting to run across the interstate highway on which Officer was traveling. *See id. Brown* does not so clearly establish the law so that "in the blink of an eye," every reasonable officer in this circuit would immediately know that intentionally door-checking a suspect to stop him from running across an interstate highway violated the Fourth Amendment. *Morrow*, 917 F.3d at 876. Plaintiff has not met his burden to identify relevant precedent that placed the constitutional question beyond debate.

> Nor has he alleged facts that rise to the level of an obvious constitutional violation for which no materially similar case is required. *See Hope* [*v. Pelzer*, 536 U.S. 730, 738 (2002)]. The complaint alleges that as Officer was traveling on the interstate, he was able to see flashing police lights, hear the [Mesquite Police Department] officers' verbal commands to stop, and see Plaintiff attempting to run across it. These facts are sufficient to support a perceived threat to pursuing officers or innocent motorists traveling on an interstate who might suddenly slow down because of the flashing lights and/or brake or swerve to avoid hitting a person running across it. Officer made a split second judgment to door-check Plaintiff to stop his flight across the highway. Even viewing the facts in the light most favorable to Plaintiff, he has not pleaded "extreme or egregious conduct" of the type found to be a clearly established violation of a more general constitutional right. *See Zimmerman*, 657 F. App'x at 346.

Report 9-10 (footnote omitted).  The magistrate judge also explained why the other cases relied on by Plaintiff—*Cooper* and *Darden*—are distinguishable and noted that Plaintiff himself had conceded that the cases are distinguishable.  *Id.* at 10 n.5.  In addition, the magistrate judge noted that Plaintiff had not pointed to any "robust consensus of persuasive authority" outside of the Fifth Circuit to show that the "law so clearly and unambiguously prohibit[ed] [Warren's] conduct such that every reasonable official would understand that the particular conduct violate[d] the law."  *Id.* at 10.

**Memorandum Opinion and Order – Page 24**

In his objections to the Report, Hobbs contends that the magistrate judge erred in: (1) concluding that the law is not clearly established; and (2) applying the wrong legal standard. Regarding his first objection, Hobbs argues that there is abundant case authority in the Fifth Circuit concerning the force that can be used on persons who are fleeing the police. Hobbs contends that he listed several cases, including *Brown v. Long Beach Police Department*, but the magistrate judge incorrectly distinguished this case and did not address the others he cited.  Hobbs contends that it is not necessary to have case authority that is factually identical, and the magistrate judge incorrectly focused on the instrumentality of the force used—a car door—in determining whether the law was clearly established to put Warren on notice that his conduct was unlawful.

As indicated above, the magistrate judge considered and distinguished the cases relied on by Plaintiff.  In addition to *Brown*, *Darden*, and *Cooper*, Plaintiff also referenced *Zimmerman v. Cutler.* Plaintiff, however, did not explain in his response to the Motion to Dismiss or objections to the Report why he believes this case supports his contention that the law was so clearly and unambiguously established at the time to put Warren on notice that his use of the passenger door of a moving car to stop him from fleeing and crossing IH 635 on foot was unlawful under the circumstances confronting him.  Plaintiff cited other cases in his response to the Motion to Dismiss but not with respect to the second prong of qualified immunity.  His objection that the magistrate judge did not address the cases relied on by him regarding this issue is, thus, without merit.

The court also agrees with the magistrate judge's reasoning for distinguishing Plaintiff's cases, and it finds no error in her conclusion, based on the factual allegations in the Amended Complaint, that Plaintiff has not carried his burden of "identifying controlling precedent or a robust consensus that 'squarely governs' the specific facts at issue in this case, or places the constitutional

question beyond debate such that any reasonable officer would know that using a door-check to stop a suspect attempting to run across an interstate highway violates the Fourth Amendment." Report 12 (citations omitted).  The court understands Plaintiff's contention that he posed no threat because: (1) he was unarmed; (2) only suspected by Mesquite police officers of shoplifting; and (3) Warren was oblivious to this fact.  As previously explained, however, this argument disregards other key allegations in Plaintiff's Amended Complaint regarding the perceived threat to officers chasing him across an interstate highway and innocent motorists traveling on IH 635 that support the magistrate judge's determination.  The argument also applies the wrong legal standard to the extent Plaintiff contends that the court should consider facts unknown to Warren at the time.

Regarding his second objection, Plaintiff contends that the magistrate judge applied the wrong legal standard because she failed to accept as true the factual allegations in his Amended Complaint:

> The magistrate found that the "facts are sufficient to support a perceived threat to pursuing officers or innocent motorists traveling on an interstate who might suddenly slow down because of the flashing lights and/or brake to swerve to avoid hitting a person running across it. Officer made a split second judgment to door-check Plaintiff to stop his flight across the highway." (ECF 60, page 10).

> In evaluating a motion brought under Rule 12(b)(6), a court must accept all well-pleaded facts as true. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019). Here, Plaintiff pleaded that there was time to contemplate the circumstance before acting. (ECF 33, ¶¶14-15). Defendant Warren saw Hobbs, Defendant Warren was not driving, Defendant Warren asked his wife to change lanes to get closer to Hobbs, and then when they got close to Hobbs, Defendant Warren used the weight and momentum of the car to crush Hobbs. (ECF 33, ¶¶14-19).

> Further, Hobbs alleged that he "was not carrying a weapon or threatening anyone as he was fleeing the officers." (ECF 33, ¶14). Hobbs pleaded that he posed no threat to any cars or drivers on the interstate and that he posed no threat to the officers in pursuit of Hobbs. (ECF 33, ¶14).

**Memorandum Opinion and Order – Page 26**

Thus, the pleading alleges that this was not a "split second decision," but was instead a deliberate choice. Accordingly, the magistrate applied the wrong standard.

Pl.'s Obj. 6.[9]

Plaintiff's allegation that he was not threatening anyone and posed no threat to Warren, other officers, or motorists is a legal conclusion that must be viewed in the context of all facts and circumstances alleged in the Amended Complaint that are relevant to the reasonableness of force used by Warren, not just those that fit Plaintiff's chosen narrative. Moreover, as already explained, any improper motive Warren may have had is not relevant, and neither the court's nor the magistrate judge's analysis has viewed his use of force as unintentional or accidental as Warren suggests in his Motion to Dismiss, which is outside the scope of the pleadings. That the magistrate judge disagreed with Plaintiff's characterization of his pleadings or the legal authority relied on by him does not establish that she applied the wrong legal standard. Further, Plaintiff's objection that "he pleaded that there was time to contemplate the circumstance before acting" is not supported by the factual allegations in his Amended Complaint. The court, therefore, **overrules** Plaintiff's objections to the Report.

In the final analysis, if public officials or law enforcement officers of "reasonable competence could disagree [on whether the conduct is legal or appropriate], immunity should be recognized." *Malley*, 475 U.S. at 341. Based on the situation confronting Warren, there is no question that reasonable officers could disagree on Warren's conduct during his encounter with Hobbs. A police officer's lot is not so hapless that the law allows courts to engage in second-guessing or to conduct an analysis based on facts not known to Warren. To do so, violates long-established precedent by

---

[9] Though Plaintiff cites "ECF 33," his Amended Complaint actually appears on the docket sheet as Document No. 41.

the Supreme Court and Fifth Circuit that demands district courts base their analysis on the circumstances as they reasonably appeared to the officer at the time he or she engaged in the conduct that is alleged to have been unconstitutional or unlawful.  In other words, Hobbs has not convinced the court that he has set forth sufficient allegations to show that the constitutionality of Warren's conduct was "beyond debate."  *Al-Kidd*, 563, U.S. at 741.

### III.    Amendment of Pleadings

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation.  The decision to allow amendment of a party's pleadings is within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted).  In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Although Hobbs requested to amend his pleadings in response to Warren's Motion to Dismiss, he did not explain how he would cure the deficiencies noted in the Motion to Dismiss that the court has determined to be dispositive.  He also provided no explanation in his objections to the Report as to how he would cure the deficiencies identified by the magistrate judge.  Additionally, Plaintiff was previously allowed to amend his pleadings after the first round of motions to dismiss were filed, and the court is not convinced that the deficiencies identified are curable now that he

alleges in his Amended Complaint that he was in the process of attempting to cross IH 635 when struck, as opposed to merely standing on the shoulder of the highway waiting for traffic to lighten before crossing. When viewed in the context of Hobbs's acknowledgment that—Warren knew that he was fleeing to evade detention or arrest despite commands by the Mesquite police officers for him to stop and saw police lights flashing— this allegation supports the magistrate judge's determination that Warren's conduct was not objectively unreasonable in light of the facts and circumstances confronting him at that moment or clearly established law at the time.  Hobbs's allegation that he was unarmed does not change the result.  Regardless, when a plaintiff has previously amended his or her pleadings, "[a]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986); *see also Schiller*, 342 F.3d at 567 (citation omitted). Plaintiff has had fair opportunity to make his case, and the court determines that he has pleaded his "best case," such that further amendment would be futile and unnecessarily delay the resolution of this litigation.  Accordingly, the court **denies** Plaintiff's request to amend his pleadings.

## IV.    Conclusion

For the reasons explained, the court **concludes** that Plaintiff has failed to plead sufficient facts to support his excessive force claim and to defeat Warren's defense of qualified immunity.  Warren is, therefore, entitled to qualified immunity on Plaintiff's excessive force claim.  Having reviewed Warren's Motion to Dismiss, the parties' briefs, the pleadings, and Report, and having conducted a de novo review of that portion of the Report to which objection was made by Plaintiff, the court determines that the findings and conclusions of the magistrate judge are correct, and

**accepts** them, **as supplemented**, as those of the court.  Accordingly, the court **overrules** Plaintiff's objections, **grants** Defendant Kyle Warren's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 46), and **dismisses with prejudice** Plaintiff's excessive force claim brought pursuant to section 1983. Further, the court **denies** Plaintiff's request to further amend his pleadings.  As no claims remain, the court will issue a judgment by separate document as required by Federal Rule of Civil Procedure 58.

  **It is so ordered** this 22nd day of May, 2020.

            _____
            Sam A. Lindsay
            United States District Judge